IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JESSE CLYDE BURLESON,

    Plaintiff,                       No. CIV S-00-2591 DFL PAN P

    vs.

FELIPE M. SAMSON, et al.,

    Defendants.              <u>FINDINGS & RECOMMENDATIONS</u>

                              /

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  In a verified complaint, plaintiff alleges defendant Samson ordered plaintiff to fry chicken on kitchen grills Samson knew lacked grease traps and as a result plaintiff slipped on overflowing grease and burned himself on the grill.  Plaintiff alleges the other defendants were responsible for kitchen safety and knew of the hazard the missing grease traps posed but failed to correct the problem.  Plaintiff claims defendants violated his Eighth Amendment right to be free of cruel and unusual punishment and his Fourteenth Amendment right to equal protection.

        Defendants Hickman, Madave, LaRue, Clark, Eugeino, Franks and Samson move for summary judgment.

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

        Summary judgment is appropriate when it is demonstrated that there exists "no

1

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On January 8, 2002, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v.

Eikenberry, 849 F.2d 409 (9th Cir. 1988).

UNDISPUTED FACTS[1]

At all times relevant to this action plaintiff was a prisoner and defendants worked as corrections staff at Mule Creek State Prison.

Plaintiff worked as a prison cook. On May 28, 2000, plaintiff slipped on a wet, greasy patch of floor while frying chicken on the B-Side grill and burned his right arm. Other prisoners had injured themselves the same way.

Prisoners were trained to be careful of grease splatter and to wipe the floor when necessary, and the floors were cleaned after each shift. The grill should not have been used without a receptacle to catch grease.

Prisoners have fought in the kitchen.

QUALIFIED IMMUNITY

Defendants contend they are entitled to qualified immunity. Defendants are immune from suit for damages insofar as their conduct did not violate plaintiff's clearly established rights. Harlow v. Fitzgerald, 457 U.S. 800 (1982). In deciding a claim of qualified immunity, the court must first determine whether, in the light most favorable to plaintiff, the facts alleged show defendants' conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194 (2001).

Second, the court must determine whether the right defendants are alleged to have violated was clearly established. The dispositive inquiry is whether it would be clear to a reasonable prison official that "his conduct was unlawful in the situation he confronted," by reference to decisional law agreeing that "certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand." Saucier, 533 U.S. at 201. Decisional law need not proscribe the exact conduct in question; it must only make the

---

[1] Defendants admit these facts only for purposes of summary judgment.

conduct's unlawfulness apparent.  Hope v. Pelzer, 536 U.S. 730 (2002).

## SUBSTANTIVE LAW

The Eighth Amendment requires prison officials to ensure the safety of prisoners, including protecting prisoners from each other.  Farmer v. Brennan, 511 U.S. 825 (1994); Hearns v. Terhune, 413 F.3d 1036, 1040-42 (9th Cir. 2005); LeMaire v. Maass, 12 F.3d 1444 (9th Cir. 1993).  If they fail, they violate the Eighth Amendment only if they were deliberately indifferent to the risk of harm in question, meaning they knew of it yet failed to take reasonable measures to ensure prisoners' safety.  Farmer, 511 U.S. at 837; Wilson v. Seiter, 501 U.S. 294, 302-03 (1991); Hearns v. Terhune, 413 F.3d 1036 (9th Cir. 2005).  Allegations of serious safety hazards in occupational areas exacerbated by another condition, such as inadequate lighting, state a claim for safety and security threats serious enough to violate the Eighth Amendment.  Hoptowit v. Spellman, 753 F.2d 779 (9th Cir. 1985); see also Osolinski v. Kane, 92 F.3d 934, 937 (9th Cir. 1996) (single oven with broken door hinges did not violate contemporary standards of decency where plaintiff failed to plead additional condition exacerbating the inherent danger of the broken hinges).

## ANALYSIS

Defendants assert the facts do not show they violated any constitutional right.

Plaintiff was working his prison job as a cook May 28, 2000, when he slipped on a wet, greasy patch of floor while frying chicken on the B-Side grill and burned his right arm.  Defendants knew plaintiff was not the first prisoner to injure himself in this way.

Defendants either removed or ordered removed the grease drain from the B-Side grill and so grease dripped and pooled on the floor during cooking but decided not to remove the grease drains from other grills.  Defendants knew the grill should not have been used without a receptacle to catch grease and so prisoners were trained to be careful of grease spatter and to wipe the floor when necessary.  The floors were cleaned after each shift.  Prisoners using the altered grills could use salt for traction upon a showing of need and they could use cardboard to

cover greasy areas.   Plaintiff did not use cardboard because it would impede passage of food transport carts and he feared it was a fire hazard.

Cooking where grease is permitted to pool the floor is a serious safety hazard. The contentions that defendants created the hazard, that plaintiff's fear of relying on cardboard was reasonable and that salt was not freely available all suffice as "conditions which rendered him unable to provide for his own safety" despite the hazard.  See <u>Osolinski</u>, 92 F.3d at 938.

Taken in the light most favorable to the plaintiff, the facts state a claim for relief.

Defendants assert there was no clearly established law advising them not to substitute their own safety measures for the grease trap.

While <u>Osolinski</u> did not proscribe the specific conduct at issue, it made apparent the constitutional guidelines for hazardous workplace conditions and that is all the law requires.

Defendants should not be entitled to qualified immunity.

Defendants assert there is no genuine issue they were deliberately indifferent. It is undisputed defendants knew the grill should not have been used without a grease trap and other prisoners had injured themselves because the traps had been removed.

Defendants submit evidence that out of concern for inmate safety, custodial staff removed the grease pans that came with the B-side grill and one other grill because the pans had sharp edges and could be used as weapons or to make weapons, but that prisoners were allowed to use five-gallon buckets and metal food-warming trays to catch grease, and they permitted prisoners to place cardboard on the floor to absorb grease and to sprinkle salt on the floor for traction.

Plaintiff adduces evidence that in light of the grill's dimensions, construction and placement and the path excess grease follows, neither a five-gallon bucket nor a metal food-warming receptacle could adequately prevent grease from reaching the floor and pooling. Prisoners could obtain salt for traction upon a showing of need.  They could use cardboard to absorb grease, but plaintiff did not because he feared it was a fire hazzard and it would impede

1  passage of food transport carts.  Two of the four grills in the kitchen had grease traps but the trap
2  had been removed from the B-Side grill.
3        A jury could find defendants' substitutes for the grill's grease trap were not
4  reasonable measures to protect against injury and if protecting prisoners from each other were
5  defendants' primary concern, they would have removed the traps from all the grills.
6        There is a genuine dispute about whether defendants were deliberately indifferent.
7        Accordingly, IT IS HEREBY RECOMMENDED that defendants' March 10,
8  2005, motion for summary judgment be denied.
9        These findings and recommendations are submitted to the United States District
10 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days
11 after being served with these findings and recommendations, defendants may file written
12 objections with the court.  The document should be captioned "Objections to Magistrate Judge's
13 Findings and Recommendations."  Defendants are advised that failure to file objections within
14 the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951
15 F.2d 1153 (9th Cir. 1991).
16 DATED:  March 1, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

20 \004
21 \burl2591.f&r msj